UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
:
THE REPUBLIC OF THE PHILIPPINES, :
:
                     Plaintiff, :
:
           v. :
:
GAVINO ABAYA, *et al.*, :
:
                  Defendants. :
:
------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: November 5, 2015

14 Civ. 3829 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

On May 29, 2014, the Republic of the Philippines ("Plaintiff" or the "Republic") commenced this action against Gavino Abaya, Juan Abaya, Susan Abaya, Diane Dunne, and Barbara Stone (collectively, "Defendants"), asserting state-law claims for money had and received, unjust enrichment, conversion, aiding and abetting conversion, constructive trust, and violations of New York Executive Law § 632-a.  Plaintiff's claims arise out of the distribution of proceeds from the sale of a painting that was allegedly stolen from the Republic.  Presently before the Court is an unopposed motion by Jose Duran — on his behalf and as representative of a class of judgment creditors (collectively, "Class Plaintiffs" or "Movants") of Imelda Marcos, Ferdinand R. Marcos, and the Estate of Ferdinand E. Marcos — to intervene as of right in this case pursuant to Federal Rule of Civil Procedure 24(a), or in the alternative, to be permitted to intervene pursuant to Rule 24(b).  For the

reasons set forth more fully below, Class Plaintiffs' motion to intervene pursuant to Rule 24(a)(2) is granted.

## BACKGROUND[1]

### A.    Factual Background

#### 1.    Plaintiff's Complaint

The Court recites only those Complaint allegations necessary for the resolution of the instant motion.  This action has its genesis in the more than twenty-year reign of Ferdinand E. Marcos as President of the Republic. (Compl. ¶ 7).  It is alleged that during his presidency, Marcos "systematically transferred public assets and property to his personal control through various schemes."  (*Id.* at ¶ 20).  Imelda Marcos, Marcos's wife, also allegedly misappropriated assets from the Republic, including a vast collection of artwork, jewelry, antique furniture, and real property.  (*Id.* at ¶ 22).[2]  Among other allegations of misconduct, Mrs. Marcos purportedly converted a New York City townhouse owned by the Republic to her own personal use, and adorned the residence with art, furniture, and antiques purchased with monies stolen from the Republic.  (*Id.* at ¶ 23).

Immediately prior to the fall of the Marcos regime, a substantial amount of the artwork and other valuables acquired by Mrs. Marcos vanished from the New York City townhouse.  (Compl. ¶¶ 8, 24).  These items were purportedly

---

[1]    For convenience, Plaintiff's Complaint (Dkt. #2) is referred to as "Compl."; Class Plaintiffs' Proposed Intervenor Complaint (Dkt. #9-2) is referred to as "Prop. Compl."; and Class Plaintiffs' brief (Dkt. #10) is referred to as "Mot."

[2]    Imelda Marcos is referred to as "Mrs. Marcos" to distinguish her from other members of the Marcos Family.

removed by Vilma H. Bautista, Mrs. Marcos's social secretary and personal confidant. (*Id.* at ¶¶ 9, 30). According to the Complaint, Bautista "was fully aware when she took this property that it did not belong to Mrs. Marcos, but was, in fact, the lawful property of the Republic." (*Id.* at ¶¶ 30, 37). One particular item that was allegedly stolen by Bautista, and that is at the heart of this litigation, is Claude Monet's "*Le Bassin aux Nymphease*" (the "Water Lily painting"). (*Id.* at ¶ 31).

According to the Complaint, in July 2009, Bautista and others plotted to sell the Water Lily painting. (Compl. ¶¶ 32-35). To this end, Defendants Diane Dunne and Barbara Stone located a purchaser for the painting and brokered its sale. (*Id.* at ¶¶ 18, 19, 40, 83, 91). Defendant Gavino Abaya drafted a fraudulent letter to assuage the prospective buyer's concerns over Bautista's authority to sell the Water Lily painting, while fully aware that the painting belonged to the Republic. (*Id.* at ¶¶ 38-39). On September 14, 2010, the Water Lily painting was sold for $32 million. (*Id.* at ¶ 40). Of that figure, $28 million was deposited into a bank account in Bautista's name, and the remaining $4 million was transferred to an account held jointly by Bautista, Dunne, and Stone. (*Id.* at ¶¶ 18, 19, 40, 55). Dunne and Stone then "withdrew and/or transferred [the] approximately $4 million [as] so-called commissions[.]" (*Id.* at ¶ 56). Bautista also transferred $2.7 million that she received from the sale of the painting to "Gavino Abaya and his children or relatives, Juan Abaya and Susan Abaya," in exchange for Gavino's assistance in the scheme. (*Id.* at ¶¶ 53, 101).

As a consequence of the sale, Bautista was indicted by a Grand Jury in New York County, and subsequently prosecuted by the District Attorney of New York County ("DANY"). (Compl. ¶¶ 1, 43). DANY subsequently filed an interpleader action in this Court, *The District Attorney of New York County* v. *The Republic of the Philippines*, 14 Civ. 890 (KPF) (the "Interpleader Action"), to resolve competing ownership claims over the money and property that was seized during its prosecution. (*Id.* at ¶ 1).

### 2. Class Plaintiffs' Proposed Complaint

The allegations in Class Plaintiffs' proposed complaint generally track those of the Republic's Complaint. Specifically, Class Plaintiffs' proposed complaint avers that: (i) Mrs. Marcos amassed a collection of artwork, including the Water Lily painting, during her husband's tenure as president of the Republic (Prop. Compl. ¶¶ 25, 27-28); (ii) these works were displayed in a townhouse in New York City (*id.* at ¶ 25); (iii) Bautista, with the aid of Gavino Abaya, Dunne, and Stone, schemed to sell the Water Lily painting (*id.* at ¶¶ 32-39, 43, 58, 84-85, 105); (iv) the proceeds from the sale of the painting were distributed to Stone, Dunne, Gavino Abaya, Juan Abaya, and Susan Abaya (*id.* at ¶¶ 47-48); and (v) Bautista was ultimately indicted in New York County for illegally conspiring to possess and sell the Water Lily painting (*id.* at ¶ 50).

Class Plaintiffs and the Republic offer competing theories, however, as to the rightful owner of the Water Lily painting at the time of the sale. Specifically, Class Plaintiffs allege that "at no time prior to the date on which Bautista came into custody of the Water Lily painting, or thereafter, did Imelda

4

Marcos transfer title or any other possessory interest in the Water Lily Painting." (Prop. Compl. ¶ 30).  Accordingly, unlike the allegations of the Republic in its Complaint, Class Plaintiffs allege that the Water Lily painting "remained the property of Imelda Marcos." (*Id.*).  As a consequence, "Bautista's custody of the Water Lily Painting, if in any way legitimate, was in her capacity as bailee, trustee or agent of Imelda Marcos[.]" (*Id.* at ¶ 31).

Class Plaintiffs' proposed complaint then asserts an interest in the funds obtained from the sale of the Water Lily painting by virtue of their status as judgment creditors of Imelda Marcos.  (Prop. Compl. ¶ 52).  In this regard, Class Plaintiffs aver that they obtained a judgment against the Estate of Ferdinand E. Marcos as a consequence of human rights violations committed during the Marcos presidency.  (*Id.* at ¶¶ 11-12, 22).  Class Plaintiffs further recite that they obtained a 2011 judgment (the "2011 Judgment") against Imelda R. Marcos, Ferdinand R. Marcos, and the Estate of Ferdinand E. Marcos.  (*Id.* at ¶¶ 3, 11-12, 22-23).  Both judgments are registered in the Southern District of New York (*id.* at ¶ 24), and Class Plaintiffs' motion to intervene is premised on the 2011 Judgment (*id.* at ¶ 3).

### B.   Procedural Background

On May 29, 2014, Plaintiff filed the Complaint in this action.  (Dkt. #2). The Court accepted the instant action as related to the Interpleader Action on June 18, 2014.  On February 19, 2015, the Court issued an oral decision staying the special proceedings that Class Plaintiffs had commenced against the Defendants in New York State Court.  (*See* Dkt. #7).  The Court then issued

an Order on April 16, 2015, confirming that the state court proceedings were stayed in their entirety. (Dkt. #7). Thereafter, on May 12, 2015, Class Plaintiffs moved to intervene in this action. (Dkt. #8-10). The existing parties to this litigation have not opposed this motion.

## DISCUSSION

### A. Applicable Law

Federal Rule of Civil Procedure 24(a)(2) provides that "[o]n timely motion, the court must permit anyone to intervene who … claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). The Second Circuit employs a four-factor test in determining whether a party is entitled to intervene under this provision. *See United States* v. *Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994). Specifically, "[i]ntervention as of right under Rule 24(a)(2) is granted when an applicant: [i] files a timely motion; [ii] asserts an interest relating to the property or transaction that is the subject of the action; [iii] is so situated that without intervention the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and [iv] has an interest not adequately represented by the other parties." *Id.* (citing *United States* v. *New York*, 820 F.2d 554, 556 (2d Cir. 1987); *Restor-A-Dent Dental Labs., Inc.* v. *Certified Alloy Prods., Inc.*, 725 F.2d 871, 874 (2d Cir. 1984)); *see*

*also R Best Produce, Inc.* v. *Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006).

**B.   Analysis**

    **1.   Class Plaintiffs' Application Is Timely**

When analyzing timeliness, courts generally consider: "'[i] how long the applicant had notice of the interest before it made the motion to intervene; [ii] prejudice to existing parties resulting from any delay; [iii] prejudice to the applicant if the motion is denied; and [iv] any unusual circumstances militating for or against a finding of timeliness.'" *Frankel* v. *Cole*, 490 F. App'x 407, 408 (2d Cir. 2013) (summary order) (quoting *Pitney Bowes, Inc.*, 25 F.3d at 70); *accord MasterCard Int'l Inc.* v. *Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 390 (2d Cir. 2006).

Applying these factors, the Court concludes that Class Plaintiffs' motion to intervene is timely. Although Class Plaintiffs waited nearly a year to intervene in the action, this delay does not automatically foreclose the instant motion. *See United States* v. *Yonkers Bd. of Educ.*, 801 F.2d 593, 595 (2d Cir. 1986) (noting that district courts "must not consider merely the length of time the litigation or proceeding has been pending, but should base its determination upon all of the circumstances of the case"). Specifically, the delay in this case was occasioned by Class Plaintiffs' efforts to prosecute a similar action in state court, and once this Court stayed that action, the motion to intervene was promptly filed. (Mot. 6).

Perhaps more importantly, any delay in filing the motion to intervene has not prejudiced the parties, as discovery has not commenced and the parties have not engaged in dispositive motion practice. *See, e.g.*, *Stutts* v. *De Dietrich Grp.*, No. 03 Civ. 4058 (ILG) (MDG), 2005 WL 3158038, at *1 (E.D.N.Y. Nov. 28, 2005) (although motion to intervene was filed almost two years after the action was commenced, parties were not prejudiced because discovery had not commenced); *Mortgage Lenders Network, Inc.* v. *Rosenblum*, 218 F.R.D. 381, 384 (E.D.N.Y. 2003) (finding no prejudice where discovery was in its initial stages); *see also E.E.O.C.* v. *Mavis Disc. Tire*, No. 12 Civ. 0741 (KPF), 2013 WL 5434155, at *4 (S.D.N.Y. Sept. 30, 2013) (motion to intervene timely when discovery had not yet begun). Any prejudice to the parties is further belied by the absence of objections to Class Plaintiffs' motion. *See Stutts*, 2005 WL 3158038, at *1 (finding no prejudice where the motion to intervene was unopposed); *Rosenblum*, 218 F.R.D. at 384 (noting, with respect to the prejudice analysis, that it was significant that the motion to intervene was unopposed).

By contrast, Class Plaintiffs will be severely prejudiced if their motion is denied. Class Plaintiffs claim an interest in proceeds from the sale of the Water Lily painting, the property at the heart of this case. This interest is antithetical to the interest the Republic asserts in the proceeds, and therefore, Class Plaintiffs stand to suffer clear prejudice if excluded from participating in this proceeding. *See Peterson* v. *Islamic Republic of Iran*, 290 F.R.D. 54, 58 (S.D.N.Y. 2013) ("The Intervenors have made colorable arguments to

entitlement to a portion of the $1.75 billion in cash proceeds.  Given the difficulty of locating assets of Iran subject to execution in the United States, barring the Intervenors from satisfying their $32 million judgment surely constitutes prejudice."); *In re Tribune Co. Fraudulent Conveyance Litig.*, 291 F.R.D. 38, 41 (S.D.N.Y. 2013) ("As for prejudice, Movants would clearly be prejudiced if they are excluded from pursuing their alleged interest in any proceeds recouped from avoided transactions."); *Abondolo* v. *GGR Holbrook Medford, Inc.*, 285 B.R. 101, 110 (E.D.N.Y. 2002) ("Third, the United States may be severely prejudiced if it is not permitted to intervene in the Third-party Action, because it will be denied the opportunity to litigate the ownership of property over which it claims a substantial interest.").  Finally, there are no unusual circumstances in this case militating against a finding of timeliness.  Accordingly, Class Plaintiffs' motion is timely.

### 2. Class Plaintiffs Claim an Interest Relating to the Property or Transaction That Is the Subject Matter of the Action

The Second Circuit has explained that for purposes of Rule 24(a)(2), an intervenor must have a "direct, substantial, and legally protectable" interest in the property or transaction that is the subject of the underlying action. *Brennan* v. *N.Y.C. Bd. of Educ.*, 260 F.3d 123, 129 (2d Cir. 2001) (quoting *Washington Elec. Co-op., Inc.* v. *Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990)).  In this case, the Republic is asserting a claim to recover the proceeds derived from the sale of the Water Lily painting on the theory that it, and not any member of the Marcos Family, was the rightful owner of the painting.  On the other hand, Class Plaintiffs' proposed complaint

alleges that Mrs. Marcos was the rightful owner of the Water Lily painting, and by virtue of her ownership, the proceeds from its sale belong to her rather than the Republic.  Critical to the resolution of the instant motion, Class Plaintiffs hold a judgment registered in this District against Imelda Marcos, which judgment allows them to execute on Mrs. Marcos's assets.  As a consequence of Mrs. Marcos's alleged ownership of the Water Lily painting and the 2011 Judgment, Class Plaintiffs have asserted a sufficiently direct, substantial, and legally protectable interest in the property that is the subject of the underlying action.  *See Lawsky* v. *Condor Capital Corp.*, No. 14 Civ. 2863 (CM), 2014 WL 2109923, at *7 (S.D.N.Y. May 13, 2014) (holding that intervenors, who were secured lenders, had sufficient interest in litigation); *Peterson*, 290 F.R.D. at 59 (finding that judgment creditor had sufficient interest in the litigation).

### 3. Protection of Class Plaintiffs' Interest May, as a Practical Matter, Be Impaired by the Disposition of the Action

"As to the third requirement, impairment, the proposed intervenor must show that his interest may be impaired by the disposition of the action, which can be satisfied by asserting that as a practical matter, an adverse decision may compromise the party's claims." *Delaware Trust Co.* v. *Wilmington Trust, N.A.*, 534 B.R. 500, 509 (S.D.N.Y. 2015) (internal citations, alterations, and quotation marks omitted).  Here, Class Plaintiffs and the Republic have asserted competing theories of ownership in the proceeds from the sale of the Water Lily painting.  As a consequence, a decision in favor of the Republic would frustrate Class Plaintiffs' interests by disposing of the assets from the

sale of the painting in a manner that potentially deprives them of the ability to satisfy a portion of the 2011 Judgment.

### 4. Class Plaintiffs' Interests Are Not Adequately Protected by an Existing Party

The intervenor's burden of demonstrating inadequacy of "representation is generally speaking 'minimal[.]'" *Butler, Fitzgerald & Potter* v. *Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001) (quoting *Trbovich* v. *United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)). Here, the Republic will not adequately protect Class Plaintiffs' interests, inasmuch as each party is asserting mutually antagonistic claims to the proceeds from the sale of the Water Lily painting. Moreover, the Republic has purportedly expanded substantial resources fighting Class Plaintiffs' judgments and has asserted a claim for constructive trust against Class Plaintiffs in the Interpleader Action. (Mot. 7-8). In this situation, the Court finds that Class Plaintiffs' interests will be inadequately protected by the Republic.

### CONCLUSION

For the reasons discussed herein, Class Plaintiffs' motion to intervene as of right is hereby GRANTED. Class Plaintiffs shall file their Proposed Intervenor Complaint forthwith. The Clerk of Court is directed to terminate Docket Entry 8.

SO ORDERED.

Dated: November 5, 2015
New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

11